UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD T. O'DONNELL, on behalf of himself and all others similarly situated, | : : : |
| Plaintiffs, | : CIVIL ACTION NO. : |
| v. | : : |
| AXA EQUITABLE LIFE INSURANCE COMPANY, | : : : |
| Defendant. | : September 10, 2015 : |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant AXA Equitable Life Insurance Company ("Defendant" or "AXA Equitable"), with its principal place of business at 1290 Avenue of the Americas, New York, New York 10104, by and through its undersigned counsel, files this Notice of Removal to remove this putative class action from the Connecticut Superior Court, Judicial District of New Haven, Case No. NNH-CV15-6056844-S, to the United States District Court for the District of Connecticut pursuant to the removal provision of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f)(2) and 28 U.S.C. §§ 1441 & 1446.

In support of this Notice of Removal, Defendant states as follows:

1.     On or about August 28, 2015, Plaintiff Richard T. O'Donnell filed this putative class action in the Connecticut Superior Court, Judicial District of New Haven, Case No. NNH-CV15-6056844-S, captioned Richard T. O'Donnell, on behalf of himself and all others similarly situated v. AXA Equitable Life Insurance Company (the "State Court Action" or

"O'Donnell II").  Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Summons and Complaint is attached hereto as Exhibit 1.

2.       As stated in the Return of Service on file with the Connecticut Superior Court, which is attached hereto as Exhibit 2, the Summons and Complaint in the State Court Action are dated August 18, 2015 and were served on AXA Equitable on August 21, 2015.[1]

3.       In the State Court Action, O'Donnell purports to represent a nationwide class of AXA Equitable variable annuity contract holders whose account value was invested in SEC-registered investment trusts that employed an investment strategy known as the "AXA Tactical Manager Strategy" or the "ATM Strategy."  (See Compl. (Ex. 1) ¶ 2.)

4.       As explained infra (¶¶ 19-34), Plaintiff's claim alleges "a misrepresentation . . . of a material fact in connection with the purchase or sale of a covered security," 15 U.S.C. § 78bb(f)(1)(A), as well as a "manipulative or deceptive device or contrivance."  15 U.S.C. § 78bb(f)(1)(B).  His claim is therefore removable under the removal provision of SLUSA, 15 U.S.C. § 78bb(f)(2).

5.       Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be filed promptly with the Clerk of the Connecticut Superior Court, Judicial District of New Haven.

### PERTINENT PROCEDURAL BACKGROUND

**Plaintiff and Plaintiff's Counsel Have Previously Filed
Several Class Actions Addressing the Same Threshold Legal Issues,
One of Which Is Now Pending in the Southern District of New York**

6.       The instant action is the second putative nationwide class action Plaintiff has filed against AXA Equitable and the third brought by Plaintiff's New York counsel, Harwood Feffer

---

[1]      Also attached hereto as Exhibit 3 is a true and correct copy of the docket sheet for the State Court Action as of the date hereof.

LLP ("Harwood Feffer") concerning the same subject matter.  On March 28, 2014, O'Donnell,

through his counsel Harwood Feffer, commenced a putative class action in the United States

District Court for the Southern District of New York by filing a complaint that included

allegations substantially similar to those alleged in the State Court Action.  That putative class

action, in which O'Donnell purported to represent a nationwide class of AXA Equitable variable

annuity contract holders, was captioned O'Donnell v. AXA Equitable Life Insurance Co., No.

14-cv-2209 (VSB) (DCF) (S.D.N.Y. filed Mar. 28, 2014) ("O'Donnell I").  A copy of the

complaint in O'Donnell I is attached hereto as Exhibit 4.

      7.     Shortly after O'Donnell and his counsel at Harwood Feffer commenced

O'Donnell I, three other substantially similar putative class actions were also commenced in the

Southern District of New York, each on behalf of a putative nationwide class of AXA Equitable

variable annuity contract holders.[2]

      8.     The complaints in O'Donnell I and the three other putative class actions asserted

that the Southern District of New York had subject matter jurisdiction over those actions under

the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453.  All four

actions were assigned to the Hon. Vernon S. Broderick of the Southern District of New York.

      9.     On June 16, 2014, AXA Equitable informed Judge Broderick of its intent to move

to dismiss the four actions for lack of subject matter jurisdiction, for the reason that the variable

annuity contracts at issue in those actions were "covered securities" within the meaning of

---

[2]    The other three being Zweiman v. AXA Equitable Life Insurance Co., No. 14-cv-3128
(VSB) (DCF) (S.D.N.Y. filed May 2, 2014) ("Zweiman I"), Swallow v. AXA Equitable Life
Insurance Co., No. 14-cv-3505 (VSB) (DCF) (S.D.N.Y. filed May 15, 2014), and Cabral v.
AXA Equitable Life Insurance Co., No. 14-cv-3715 (VSB) (DCF) (S.D.N.Y. filed May 23,
2014).

SLUSA and thus fell within an exception to CAFA's grant of jurisdictional authority.[3]  Having been so apprised, all four plaintiffs voluntarily dismissed their actions on June 19, 2014.[4]

10.    On that same date, Harwood Feffer, together with counsel for plaintiffs in the other three actions, filed yet another putative class action against AXA Equitable, this time in New York state court under the caption Zweiman v. AXA Equitable Life Insurance Co., Index No. 59638/2014 (N.Y. Sup. Ct. Westchester County filed June 19, 2014) ("Zweiman").  Ms. Zweiman was one of the four plaintiffs who had commenced and dismissed putative class actions in the Southern District of New York, and in her new action she again purported to represent a putative nationwide class of AXA Equitable variable annuity contract holders.  A copy of the Zweiman complaint is attached hereto as Exhibit 5.

11.    On July 3, 2014, Defendant AXA Equitable filed a Notice of Removal in the Southern District of New York to remove Zweiman from state court to federal court pursuant to the removal provision of SLUSA, 15 U.S.C. § 78bb(f)(2).  A copy of that Notice of Removal is attached hereto as Exhibit 6 (without the exhibits to that Notice, which are publicly available through that court's electronic filing system).

12.    On July 21, 2014, following assignment of the removed Zweiman action[5] to Judge Broderick as related to the four previously-filed (and voluntarily-dismissed) federal actions, AXA Equitable informed the court of its intention to move to dismiss the action on the ground

---

[3]   O'Donnell, No. 14-cv-2209 (VSB) (DCF) (S.D.N.Y.), ECF No. 16.

[4]   O'Donnell, No. 14-cv-2209 (VSB) (DCF) (S.D.N.Y.), ECF No. 17; Zweiman I, No. 14-cv-3128 (VSB) (DCF) (S.D.N.Y.), ECF No. 12; Swallow, No. 14-cv-3505 (VSB) (DCF) (S.D.N.Y.), ECF No. 7; Cabral, No. 14-cv-3715 (VSB) (DCF) (S.D.N.Y.), ECF No. 11.

[5]   Zweiman v. AXA Equitable Life Insurance Co., No. 14-cv-5012 (VSB)(DCF) (S.D.N.Y. filed July 3, 2014).

that the claim asserted therein was precluded by SLUSA and on other grounds.  At Zweiman's

request, Judge Broderick directed AXA Equitable to move for dismissal only on SLUSA

preclusion grounds, deferring consideration of any other grounds for dismissal.[6]

13.     On July 30, 2014, Zweiman filed a motion to remand that action to state court,

contending that her action was not governed by SLUSA.

14.     The parties in Zweiman completed briefing on the motions to dismiss and to

remand on September 25, 2014.[7]  Those motions are now sub judice before Judge Broderick.

### This Newly-Filed *O'Donnell II* Action Is Virtually Identical to the *Zweiman* Action Pending in the Southern District of New York

15.     The Zweiman and O'Donnell II complaints make virtually identical allegations,

and both plaintiffs purport to represent a nationwide class of variable annuity contract holders.

16.     In particular, the Zweiman and O'Donnell II complaints purport to assert claims

on behalf of a putative nationwide class of AXA Equitable variable annuity contract holders

whose account value was invested in portfolios that employed a "volatility management"

strategy, which both complaints refer to as the "ATM Strategy."  Portfolios implementing

volatility management were designed to track well-known equity market indexes, except during

periods of high volatility, when the portfolio's holdings would be managed to limit equity

exposure to the indexes.

---

[6]     Tr. at 18:16-24, Zweiman, No. 14-cv-5012 (VSB)(DCF) (S.D.N.Y.), ECF No. 25.

[7]     Zweiman, No. 14-cv-5012 (VSB)(DCF) (S.D.N.Y.), ECF No. 11 (AXA Equitable's letter to Judge Broderick stating intent to move to dismiss); id. ECF Nos. 16-18 (plaintiff's motion to remand); id. ECF Nos. 27-29 (AXA Equitable's opposition to motion to remand and cross-motion to dismiss); id. ECF No. 30 (plaintiff's reply in support of motion to remand and opposition to cross-motion to dismiss); id. ECF No. 31 (AXA Equitable's reply in support of motion to dismiss).  A copy of the docket in Zweiman is attached hereto as Exhibit 7.

17.     The <u>Zweiman</u> and <u>O'Donnell II</u> complaints both assert breach of contract claims contending that (i) AXA Equitable implemented a volatility management investment strategy; (ii) that investment strategy was implemented in violation of New York law because AXA Equitable made misleading filings concerning that strategy with the New York Department of Financial Services ("NYDFS"); (iii) AXA Equitable had contractually promised to comply with applicable law; (iv) AXA Equitable's purported violation of law constitutes a breach of that contractual promise; and (v) plaintiff has suffered damages that may be measured by the diminished investment returns purportedly flowing from the use of that investment strategy:

| ***Zweiman* alleges . . .** | **. . . *O'Donnell II* likewise alleges:** |
| --- | --- |
| **(i)** "Sometime between 2009 and 2011 — after plaintiff's purchase of the variable annuity — AXA began implementing the ATM Strategy for the sole purpose of reducing AXA's exposure to market volatility . . . ."  (Ex. 5, ¶ 11.) | "Sometime between 2009 and 2011 — after plaintiff's purchase of the variable annuity — AXA began implementing the ATM Strategy for the sole purpose of reducing AXA's exposure to market volatility . . . ."  (Ex. 1, Compl. ¶ 15.) |
| **(ii)** "As found by the DFS, . . . AXA violated New York law in connection with its implementation of the ATM Strategy."  (Ex. 5, ¶ 13.) | "As found by the NYDFS, . . . AXA violated New York Insurance Law  § 4240 in connection with its implementation of the ATM Strategy."  (Ex. 1, Compl. ¶ 21.) |
| **(iii)** "In its contracts with plaintiff and the other members of the Class, AXA covenanted that it would comply with all applicable laws, including New York law."  (Ex. 5, ¶ 13.) | "In its contracts with plaintiff and the other members of the Class, AXA covenanted that it would comply with all applicable laws, including New York law."  (Ex. 1, Compl. ¶ 21.) |
| **(iv)** "AXA breached the terms of the variable deferred annuities held by plaintiff and the Class by implementing the ATM Strategy in violation of New York law."  (Ex. 5, ¶ 20.) | "AXA breached the terms of the variable deferred annuity policies held by plaintiff and the Class by implementing the ATM Strategy in violation of applicable law." (Ex. 1, Compl. ¶ 31.) |

| _Zweiman_ alleges . . . | . . . _**O'Donnell II**_ likewise alleges: |
|---|---|
| **(v)** "[D]uring the period 2010 through 2012, there was a sharp divergence in performance between two equivalent investments that was attributable to the use of the ATM Strategy.  Specifically, the investment without the ATM Strategy generated approximately 11.5 percent higher returns during this period than the investment that utilized the ATM Strategy." (Ex. 5, ¶ 15.) | "[D]uring the period 2010 through 2012, there was a sharp divergence in performance between two equivalent investments that was attributable to the use of the ATM Strategy.  Specifically, the investment without the ATM Strategy generated approximately 11.5 percent higher returns to policyholders during this period than the investment that utilized the ATM Strategy." (Ex. 1, Compl. ¶ 23.) |
| **(vi)** "This action is brought as a class action . . . on behalf of all persons who purchased variable annuities from AXA which subsequently became subject to the ATM Strategy, and who suffered injury as a result thereof (the 'Class')."  (Ex. 5, ¶ 16.) | "This action is brought as a class action . . . on behalf of all persons who purchased variable annuities from AXA which subsequently became subject to the ATM Strategy, and who suffered injury as a result thereof (the 'Class')."  (Ex. 1, Compl. ¶ 25.) |

18.     Because the O'Donnell II complaint contains allegations virtually identical to those in Zweiman, the O'Donnell II action is subject to removal under SLUSA for the same reasons as the Zweiman action.  (See infra ¶¶ 19-34.)  Counsel's arguments as to whether SLUSA precludes Plaintiff's claims have already been fully briefed in the Southern District of New York in motions that are sub judice.  Accordingly, to promote judicial efficiency and prevent inconsistent outcomes that could result from duplicative litigation of the same threshold legal issues in two courts on behalf of two identically-defined putative classes, Defendant will promptly move this Court to transfer the O'Donnell II action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## THE STATE COURT ACTION IS REMOVABLE UNDER SLUSA

19.     The applicable SLUSA provision, codified as Section 28(f) of the Securities Exchange Act of 1934, 15 U.S.C. § 78bb(f), promotes the uniform application of federal securities disclosure standards, including by providing for the removal to federal court of certain

putative class actions asserting claims involving "covered securities."  See generally Merrill
Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 82-84 (2006) ("Dabit"); Backus v.
Conn. Cmty. Bank, N.A., 789 F. Supp. 2d 292, 300-08 (D. Conn. 2011).

20.     SLUSA provides that "[a]ny covered class action brought in any State court
involving a covered security, as set forth in [15 U.S.C. § 78bb(f)(1)], shall be removable to the
Federal district court for the district in which the action is pending."  15 U.S.C. § 78bb(f)(2); see
Dabit, 547 U.S. at 83 n.7.  For the reasons set forth below, the O'Donnell II action is a "covered
class action . . . involving a covered security" within the scope of 15 U.S.C. § 78bb(f)(1), and
therefore removal to this United States District Court is proper.

### The State Court Action Is a Covered Class Action

21.     SLUSA defines a "covered class action" as:

> any single lawsuit in which . . . one or more named parties seek to recover
> damages on a representative basis on behalf of themselves and other unnamed
> parties similarly situated, and questions of law or fact common to those persons or
> members of the prospective class predominate over any questions affecting only
> individual persons or members.

15 U.S.C. § 78bb(f)(5)(B)(i)(II).

22.     The O'Donnell II action is alleged to be a covered class action.  Plaintiff seeks to
recover damages on a representative basis for himself and others similarly situated and alleges
that the "[c]lass  consists of thousands of persons and is so numerous that joinder of all
members . . . is impracticable."  (Ex. 1, Compl. ¶ 27(a).)  The Complaint also alleges that
common questions of law or fact predominate over individual questions.  (Id. ¶ 27(b).)

8

Significantly, Plaintiff's counsel in <u>Zweiman</u> acknowledged that the <u>Zweiman</u> action was a covered class action under SLUSA.[8]

23.     The <u>O'Donnell II</u> action also falls within the scope of 15 U.S.C. § 78bb(f)(1), because, for the reasons discussed <u>infra</u>, it must be read to allege both:

(A)  a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; [and]

(B)  that the defendant [AXA Equitable] used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

<u>Id.</u>

### **The State Court Action Concerns a "Covered Security"**

24.     The <u>O'Donnell II</u> action concerns a covered security, <u>i.e.</u>, a variable annuity contract.  It is well settled that a variable annuity is a "covered security" within the meaning of SLUSA.  <u>Lander v. Hartford Life & Annuity Ins. Co.</u>, 251 F.3d 101, 109 (2d Cir. 2001). Likewise, Plaintiff's counsel acknowledged in <u>Zweiman</u> that the substantially similar variable annuity at issue in that case was a covered security under SLUSA.[9]

25.     Variable annuity contracts are "'hybrid products,' possessing characteristics of both insurance products and investment securities," which permit purchasers to allocate — and, if they choose — to subsequently re-allocate their contract value among investment options similar to mutual funds.  <u>Lander</u>, 251 F.3d at 104-05.  A contract holder's allocation of contract value to various investment options causes accumulation units in a separate account to be invested in SEC-registered investment companies, which are also purchases and sales of covered

---

[8]   Mem. Of Law in Support of Motion to Remand to State Court at 7, <u>Zweiman</u>, No. 14-cv-5012 (VSB)(DCF) (S.D.N.Y.), ECF No. 17.

[9]   Mem. Of Law in Support of Motion to Remand to State Court at 7, <u>Zweiman</u>, No. 14-cv-5012 (VSB)(DCF) (S.D.N.Y.), ECF No 17.

securities. See In re Mut. Funds Inv. Litig., 437 F. Supp. 2d 439, 440-44 (D. Md. 2006) (claims

concerning purchases and sales of variable annuity accumulation units held to concern "covered

securities" within meaning of SLUSA), aff'd, 309 F. App'x 722 (4th Cir. 2009); see also Flexible

Premium Fixed and Variable Annuity Certificate §§ 2.02, 2.03 ("Contract," a copy of which is

attached hereto as Exhibit 8).[10]  Plaintiff's counsel in Zweiman did not dispute that those units

are a covered security under SLUSA.[11]

### The State Court Action Alleges a "Misrepresentation or Omission of a Material Fact In Connection With the Purchase or Sale of a Covered Security"

26.     In assessing whether a state law claim is properly removed under SLUSA, courts

"are free to look beyond the face of the . . . complaints to determine whether they allege

securities fraud in connection with the purchase or sale of covered securities." Romano v.

Kazacos, 609 F.3d 512, 519 (2d Cir. 2010).  "Courts may look to — they must look to — the

substance of a complaint's allegations in applying SLUSA.  Otherwise, SLUSA enforcement

would reduce to a formalistic search through the pages of the complaint for magic words . . . and

nothing more."  Segal v. Fifth Third Bank, N.A., 581 F.3d 305, 310 (6th Cir. 2009) (quoted in

Romano, 609 F.3d at 520).

27.     Plaintiff's claim in the State Court Action is premised on his contention that AXA

Equitable made a "misrepresentation or omission" to a New York regulator, NYDFS, regarding

the implementation of volatility management in certain investment options and that, as a

---

[10]   A court may look to documents "beyond the four corners" of a complaint to determine
       whether a case is properly removed under SLUSA.  Romano v. Kazacos, 609 F.3d 512, 521
       (2d Cir. 2010) (approving district court's consideration of account statements).

[11]   See Reply Mem. Of Law in Support of Motion to Dismiss at 7, Zweiman, No. 14-cv-5012
       (VSB)(DCF) (S.D.N.Y.), ECF No 31.

consequence of that "misrepresentation or omission," O'Donnell continued to allocate his contract value to those investments options rather than selecting other investment options available to him.  SLUSA encompasses such "holder" class actions.  See Dabit, 547 U.S. at 76, 88-89 (holding that SLUSA encompassed putative class action claim where plaintiffs alleged "misrepresentations and manipulative tactics caused them to hold onto overvalued securities").

28.     Specifically, O'Donnell's claims of "misrepresentation or omission" consist of allegations that AXA Equitable breached the variable annuity contract by failing to present a new investment strategy to the NYDFS accurately, allegedly in violation of New York law, and that, "[a]s a result, AXA's proposed amendments concerning the ATM Strategy apparently were automatically — but improperly — deemed approved." (Ex. 1, Compl. ¶ 22; see generally id. ¶¶ 16-21.)  Such allegations are an essential "factual predicate" of O'Donnell's claim and thus establish an alleged misrepresentation under SLUSA.  See Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294, 300 (3d Cir. 2005) ("Where, as here, allegations of a material misrepresentation serve as the factual predicate of a state law claim, the misrepresentation prong is satisfied under SLUSA.").

29.     O'Donnell's Complaint — like the complaint in Zweiman — also incorporates the Consent Order entered into between the NYDFS and AXA Equitable relating to the volatility management strategy, attaching it as Exhibit A.  The Consent Order states that:

> The absence of detail and discussion in [AXA Equitable's] filings [with the NYDFS] regarding the significance of the implementation of the ATM Strategy had the effect of misleading the Department regarding the scope and potential effects of the ATM Strategy on the relevant funds and the possible consequences for policyholders.

> DFS approved the filings because it was led to believe that the changes were merely routine additions of funds and similar alterations . . . . Had the Department been aware of the extent of the changes, it may have required that the existing policyholders affirmatively opt in to the ATM Strategy.

11

(Ex. 1, Compl. Ex. A, ¶¶ 8-9.) (emphasis added).)[12]

30.    By incorporating the Consent Order,[13] O'Donnell not only further alleges that AXA Equitable <u>misled</u> NYDFS, thus establishing the misrepresentation element, but also makes clear that such alleged misrepresentations were made "in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1)(A).  In its recent decision in <u>Chadbourne & Parke LLP v. Troice</u>, the Supreme Court observed that "a connection matters where the misrepresentation makes a significant difference to someone's decision to purchase or to sell a covered security."  134 S. Ct. 1058, 1066 (2014).  Plaintiff makes precisely that allegation here.

31.    O'Donnell asserts that, had AXA Equitable not made those purportedly "misleading" filings with the NYDFS, the NYDFS may have required that O'Donnell and other policy holders "affirmatively opt in" to volatility-managed investment funds.  (Ex. 1, Compl. Ex. A, ¶ 9.)  His Complaint therefore alleges that AXA Equitable's purported misrepresentations and omissions to the NYDFS made "a significant difference" to his ongoing investment decisions to purchase, sell, or hold accumulation units or to hold or surrender his annuity in its entirety.  <u>See</u> <u>Troice</u>, 134 S. Ct. at 1066; <u>accord</u> <u>Rabin v. JPMorgan Chase Bank, N.A.</u>, No. 06 C 5452, 2007 WL 2295795, at *1, *6-7 (N.D. Ill. Aug. 3, 2007) (SLUSA applied to state law claims where

---

[12]    The Consent Order expressly states that it "contains DFS's findings" — which AXA Equitable did <u>not</u> admit and does not admit — "and the relief agreed to by DFS and AXA Equitable."  (Ex. 1, Compl. Ex. A, at 2.)  AXA Equitable does not adopt the findings of the Consent Order, but references them here only for purposes of showing the nature of O'Donnell's purported claim, and reserves all of its rights with respect to O'Donnell's effort to rely upon that Consent Order.

[13]    <u>See</u> Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  The rule is the same in Connecticut Superior Court where O'Donnell commenced this action.  Conn. Practice Book § 10-29 ("Any plaintiff . . . desiring to make a copy of any document a part of the complaint shall refer to it as Exhibit A, B, C, etc.").

"Plaintiffs maintain[ed] that in furtherance of its scheme [sic], Defendants misrepresented and omitted material facts to the [SEC] on Defendants' Registration Statements" and contended that had "the SEC known the [facts], would have prevented the Registration Statements from becoming effective and Defendants would have been unable to sell shares of the Fund"); In re LIBOR-Based Fin. Antitrust Litig., 935 F. Supp. 2d 666, 729 (S.D.N.Y. 2013) (in addition to misrepresentations to plaintiffs, alleged "'phony statements'" to banking association "qualify as having been made 'in connection with' the purchase or sale of securities").

### The State Court Action Also Alleges the Use of a "Manipulative or Deceptive Device or Contrivance In Connection With the Purchase or Sale of a Covered Security"

32.     Plaintiff's Complaint alleges that AXA Equitable's implementation of the volatility-management strategy "reduced the value of plaintiff's and the other class members' variable annuity accounts" and that the strategy "substantially reduced the benefits to which plaintiff and the other members of the Class are entitled under the terms of their contracts with AXA." (Ex. 1, Compl. ¶¶ 20, 33.)

33.     O'Donnell asserts that AXA Equitable made filings with the DFS regarding the volatility management strategy that "had the effect of misleading the Department regarding the scope and potential effects" of that strategy.  (Ex. 1, Compl. Ex. A, ¶ 8.) (emphasis added).

34.     Claims, such as this one, that assert self-interested manipulation or deception in connection with the purchase or sale of covered securities have been held to allege a "manipulative or deceptive device or contrivance" within the meaning of 15 U.S.C. § 78bb(f)(1)(B).  See, e.g., Montoya v. N.Y. State United Teachers, 754 F. Supp. 2d 466, 473-74 (E.D.N.Y. 2010) (denying motion to remand and dismissing putative class action claim based on allegedly concealed conflict of interest:  "Plaintiffs here allege the classic use of a manipulative or deceptive device, aimed here at increasing the payment of fees, rather than fulfillment of the

duty to provide objective investment advice."); accord Felton v. Morgan Stanley Dean Witter & Co., 429 F. Supp. 2d 684, 694-95 (S.D.N.Y. 2006) (cited in Montoya, 754 F. Supp. 2d at 473); see also Dudek v. Prudential Sec., Inc., 295 F.3d 875, 879-80 (8th Cir. 2002) (affirming dismissal under SLUSA where "the essence of the complaint was the unlawful marketing of tax-deferred annuities, either by misrepresenting their suitability for tax-deferred retirement plans, or by failing to disclose their unsuitability for such accounts").

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED

35.     AXA Equitable was served with the summons and complaint in this action on August 21, 2015.  (See Ex. 2 hereto.)  Accordingly, pursuant to 28 U.S.C. § 1446(b)(1), this Notice of Removal is filed within thirty days of service on any defendant and is timely.  See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 354 (1999).

36.     In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice of Removal in this Court, AXA Equitable will give written notice to Plaintiff and will file a true copy of this Notice of Removal with the Clerk of the Connecticut Superior Court, Judicial District of New Haven.

WHEREFORE, AXA Equitable respectfully removes this action from the Connecticut Superior Court, Judicial District of New Haven, to the United States District Court for the District of Connecticut, and the action is now properly before this District Court and all further proceedings shall take place before this Court.

Dated:  September 10, 2015            DEFENDANT AXA EQUITABLE LIFE
INSURANCE COMPANY

By:  *s/David R. Schaefer*
David R. Schaefer (ct04334)
(dschaefer@bswlaw.com)
BRENNER, SALTZMAN & WALLMAN LLP
271 Whitney Avenue
New Haven, Connecticut 06511
Telephone:  (203) 772-2600
Facsimile:  (203) 562-2098

OF COUNSEL:

Jay B. Kasner
(Jay.Kasner@skadden.com)
Kurt Wm. Hemr
(Kurt.Hemr@skadden.com)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000

Attorneys for Defendant AXA Equitable
    Life Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2015, a copy of the foregoing Notice Of Removal

was filed electronically and was served by electronic mail and overnight courier upon counsel for

Plaintiff listed below:

> David A. Slossberg
> David L. Belt
> Hurwitz, Sagarin, Slossberg & Knuff, LLC
> 147 North Broad Street
> P.O. Box 112
> Milford, Connecticut  06460
> Telephone:  (203) 877-8000
>
> Harwood Feffer LLP
> 488 Madison Avenue, 8th Floor
> New York, New York 10022
> Telephone: (212) 935-7400

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic

filing system or by mail to anyone unable to accept electronic filing.  Parties may access this

filing through the Court's system.

Dated:  September 10, 2015

                                        *s/David R. Schaefer*
                                        David R. Schaefer (ct04334)