UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                         :
RICHARD T. O'DONNELL, individually and :
on behalf of all other persons similarly situated,:
                                                         :
                              Plaintiff,       :          15-CV-9488 (VSB)
                                                         :
                                                         :          MEMORANDUM & OPINION
                   -v-                             :
                                                         :
AXA EQUITABLE LIFE INSURANCE            :
COMPANY,                                            :
                                                         :
                              Defendant.      :
---------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___3/30/2017___

Appearances:

Joel C. Feffer
Harwood Feffer LLP
New York, New York
*Counsel for Plaintiff*

Jay B. Kasner
Kurt Wm. Hemr
Skadden, Arps, Slate, Meagher & Flom LLP
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

Currently pending before me are Plaintiff's motion to remand the action to Connecticut

Superior Court, (Doc. 22), and Defendant's motion to dismiss the complaint as precluded under

Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f), (Doc. 55).

Because Plaintiff's claims are precluded by SLUSA, Defendant's motion to dismiss is

GRANTED, Plaintiff's motion to remand is DENIED, and the case is DISMISSED.

## I.    **Background**

Certain of the factual and procedural history of this case is described in my prior opinion,

*Zweiman v. AXA Equitable Life Ins. Co.*, 146 F. Supp. 3d 536 (S.D.N.Y. 2015), familiarity with

1

which is assumed.  Briefly, Plaintiff purchased an AXA equitable variable annuity contract,
which is a "tax-deferred retirement vehicle that allows an individual to choose from a selection
of investments and then pays the individual a level of income in retirement that is determined by
the performance of such investments."  *Id.* at 541-42.  (*See* Compl. ¶¶ 5, 9.)[1]  The contract value
of Plaintiff's variable annuity was initially invested in an AXA "separate account," subject to the
laws of New York State.  *Zweiman*, 146 F. Supp. 3d at 541.  (Compl. ¶¶ 5, 9-13.)  Section 2.04
of the Contract provided that AXA had the right, "subject to compliance with applicable law," to
make certain material changes to the accounts.  *Zweiman*, 146 F. Supp. 3d at 542.  (*See* Compl.
¶ 14.)  Section 2.04 also provided that "[i]f the exercise of these rights results in a material
change in the underlying investment of a Separate Account," AXA was required to notify
O'Donnell that it had done so.  *See Zweiman*, 146 F. Supp. 3d at 542.

    In May of 2009, AXA introduced a volatility management strategy designed to tactically
manage equity exposure to Standard & Poor's 500 companies based on the level of volatility in
the market.  *Zweiman*, 146 F. Supp. 3d at 542.  (*See* Compl. ¶ 15.)  New York Insurance Law
Section 4240(e) required AXA to file with the New York State Department of Financial Services
("DFS") a request to amend and restate its Plans of Operation for any changes that AXA made to
its separate accounts.  *Zweiman*, 146 F. Supp. 3d at 543.  (*See* Compl. ¶ 17.)  In March of 2014,
AXA entered into a consent order with DFS, pursuant to which DFS determined that AXA had
failed to adequately inform and explain the plan change in its DFS filings and to its
policyholders.  *Zweiman*, 146 F. Supp. 3d at 543-44.  (*See* Compl. ¶ 22.)

    In 2014, four putative class actions, including one filed by O'Donnell, were commenced

---

[1] "Compl." refers to the Class Action Complaint filed by Plaintiff on or about August 28, 2015, in the Connecticut
Superior Court, Judicial District of New Haven, Case No. NNH-CV15-6056844-S, captioned *Richard T. O'Donnell,
on behalf of himself and all others similarly situated v. AXA Equitable Life Insurance Company* ("Complaint").
(Doc. 1 at 1; Doc. 1-1.)

in the Southern District of New York after the consent order issued.[2]  All four plaintiffs voluntarily dismissed those cases early in the litigation.  *Zweiman*, 146 F. Supp. 3d at 540. Shortly thereafter, one of the original four plaintiffs, Jessica Zweiman, filed her second action against AXA in New York Supreme Court, Westchester County.  *Id.*  On July 5, 2014, AXA removed the action to the Southern District of New York.  *Id.*  I dismissed that case on September 30, 2015, as precluded by SLUSA.  *Id.* at 536.  Plaintiff Zweiman filed a notice of appeal on October 29, 2015, but the parties filed a stipulation withdrawing the appeal pursuant to Federal Rule of Appellate Procedure 42.  *See* Notice of Appeal, *Zweiman*, No. 14-cv-5012 (S.D.N.Y. Oct. 29, 2015), ECF No. 40; Mandate, *Zweiman*, No. 14-cv-5012 (S.D.N.Y. Feb. 10, 2016), ECF No. 41.

While the *Zweiman* action was pending, O'Donnell brought this new putative class action in Connecticut state court.  The case was subsequently removed to the federal court in the District of Connecticut, (Doc. 1), and then transferred to the Southern District of New York over Plaintiff's objection, (Doc. 34).  Plaintiff has moved to remand the action to state court, (Doc. 22), and Defendant has cross-moved to dismiss the Complaint as precluded by SLUSA, which provides for the dismissal of a covered class action brought under state statutory or common law. For the reasons that follow, the case was both removable under SLUSA and must be dismissed. *See Hardy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 189 F. Supp. 2d 14, 17 (S.D.N.Y. 2001) ("If SLUSA applies, then the removal was proper and the state law claim must be dismissed.  If SLUSA does not apply, then the Court must remand the case for lack of federal subject matter jurisdiction.").

---

[2] *Zweiman v. AXA Equitable Life Insurance Co.*, No. 14-CV-3128 (S.D.N.Y. May 2, 2014); *O'Donnell v. AXA Equitable Life Insurance Co.*, No. 14-CV-2209 (S.D.N.Y. Mar. 8, 2014); *Swallow v. AXA Equitable Life Insurance Co.*, No. 14-CV-3505 (S.D.N.Y. May 15, 2014); *Cabral v. AXA Equitable Life Insurance Co.*, No. 14-CV-3715 (S.D.N.Y. May 23, 2014).

## II.   <u>Discussion</u>

This case is not materially different from the *Zweiman* action, and I rely here on the

reasoning contained in my decision dismissing that action.  Plaintiff attempts to distinguish his

case principally in the following ways:  (1) unlike the *Zweiman* complaint, there are no

allegations of "misrepresentation or omission" on the part of AXA to DFS or the policyholders,

and O'Donnell makes no such concession; (2) O'Donnell does not allege that AXA breached its

contract by failing to notify him of anything; (3) even assuming there were misrepresentations or

omissions made, they were not "in connection with" a securities transaction, and O'Donnell

makes no such concessions; and (4) O'Donnell does not seek to represent a "holder class."  (*See*

Pl.'s Br. 1-3.)[3]  These arguments are without merit.

The contract claim here is essentially identical to the claim in *Zweiman*.  As in the

*Zweiman* case, Plaintiff's contract claim is premised on the assertion that AXA breached the

contract by implementing a material change to the policy without obtaining prior approval, in

violation of New York Insurance Law § 4240, and thus in violation of the contract.  (*See* Compl.

¶¶ 16-17, 19, 21, 31.)  Plaintiff's obfuscation attempts notwithstanding, the alleged breach is

entirely based on the allegation that AXA implemented the policy change without "obtain[ing]

the requisite permission to make material changes to the various policies."  (Compl. ¶ 16.)  As a

result, Plaintiff alleges, "AXA's secret and improper implementation of its ATM Strategy

damaged plaintiff and the other class members because the benefits to which they are entitled

under the variable annuity policies have been improperly reduced."  (*Id.* ¶ 24.)  The phrase

"AXA's secret and improper implementation" bespeaks omission.  Such omission is necessary

---

[3] "Pl.'s Br." refers to Plaintiff's Memorandum of Law in Support of Plaintiff's Pending Motion to Remand.  (Doc. 54.)

for O'Donnell to maintain his contract claims.  For the reasons stated in *Zweiman*, I construe the Complaint as alleging a "misrepresentation or omission" on the part of AXA.  *See Zweiman*, 146 F. Supp. 3d at 545-49.  It makes no difference that O'Donnell, unlike Zweiman, does not concede that AXA made misrepresentations or omissions to DFS; the omission is essential to his contract claim.  *See In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 149 (2d Cir. 2015) ("[I]f the success of a claim depends on conduct specified in SLUSA, and the defendant was complicit in that conduct, the claim is covered by SLUSA even though plaintiffs have artfully avoided using SLUSA's terms.").

Plaintiff also attempts to distinguish *Zweiman* by arguing that he does not claim that AXA failed to notify policyholders of the material change, only that AXA violated the law (and thus the contract) by implementing the change without prior approval.  (Pl.'s Br. 14-15.)  Again, this argument was considered and rejected in *Zweiman*, as AXA's alleged failure to obtain proper approval prior to making the "material change" was a violation of the contract precisely and solely because the policyholders lacked notice.  *See Zweiman*, 146 F. Supp. 3d at 548-49.

In *Zweiman*, I considered the language "in connection with" the purchase or sale of covered securities in light of *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006) and *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058 (2014), and concluded that "the fraud must be of the type that is material to someone other than the fraudster to buy, sell, or hold a covered security; and, if so, any claim involving that transaction (or lack thereof)—regardless of whether the plaintiff herself was induced to take a position—is precluded."  *Zweiman*, 146 F. Supp. 3d at 550.  I therefore rejected the argument that SLUSA was inapplicable on the ground that Zweiman had purchased the security prior to the policy change in question, because the decision to hold, as opposed to purchase or sell, is covered by SLUSA.  *Id.*  Plaintiff claims that

5

he does not seek to represent a "holder class," but rather individuals who had previously purchased AXA policies that were subsequently subject to the policy change, and who could not or would not have done anything differently had they received notice of the change.  (Pl.'s Br. 15-18.)  The fact that O'Donnell does not seek to represent a holder class is beside the point. Again, as explained in *Zweiman*, the only contract provision allegedly violated was the term that the policy change must conform with applicable law, and the only applicable law plausibly violated was the disclosure requirement of Section 4240.  Had AXA complied with Section 4240, DFS "may have required that the existing policyholders affirmatively opt in to the [volatility management strategy]." *Zweiman*, 146 F. Supp. 3d at 544.  In other words, AXA was permitted to make the material changes it did under the policy; the only alleged breach was noncompliance with Section 4240, thereby avoiding prior notice.  O'Donnell's argument that he would not have changed his position had he been notified of the policy change is both immaterial and undermines his entire contract claim, as the only alleged harm as a result of the noncompliance was failure to provide notice prior to the otherwise permissible policy change.[4]

---

[4] Indeed, if Plaintiff and the class he seeks to represent would have done nothing differently had they received notice of the policy change, they could not have possibly suffered any damage, which is required for any breach of contract claim.  The alleged breach that AXA violated the law (and thus the contract) by implementing the change without getting "requisite permission to make material changes" could not have, by itself, caused Plaintiff to be damaged. Had DFS known of the changes, it might have required policyholders like Plaintiff to affirmatively opt in; but if Plaintiff would not have altered his investments upon receiving such notice, he suffered no harm as a result.

### III.    Conclusion

Accordingly, Plaintiff's motion to remand, (Doc. 22), is DENIED, Defendant's motion to

dismiss, (Doc. 55), is GRANTED, and the case is DISMISSED with prejudice.

SO ORDERED.

Dated: March 30, 2017
       New York, New York

Vernon S. Broderick
United States District Judge